E-FILED
Monday, 28 September, 2026 04:20:56 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANNA STUEBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-3341-CRL-DJQ |
| | ) | |
| GMRI, Inc., d/b/a | ) | |
| OLIVE GARDEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This cause is before the Court on Plaintiff Anna Stuebs' motion to compel and on her supplemental motion to compel.

**I. Background**

This case arises out of a personal injury that Plaintiff sustained while she was eating at an Olive Garden restaurant in Springfield, Illinois, on January 2, 2024. As part of its discovery responses, Defendant GMRI, Inc., doing business as Olive Garden (hereinafter, "Oliven Garden") refused to produce certain documents to Plaintiff even though the documents are relevant under Federal Rule of Civil Procedure 26(b)(1). Olive Garden refused to produce these responsive documents because, according to Olive Garden, the documents are protected from disclosure pursuant to the attorney-client privilege, pursuant to the insurer-insured privilege, and pursuant to the work product doctrine. According to the privilege log, these documents fell into one of two categories: (1) an incident report drafted by Olive Garden's manager who was on duty

the night of Plaintiff's accident, which the manager sent to Gallagher Basset, which is Olive Garden's third-party claims administrator; and (2) electronic claims file notes from January 2, 2024, through October 14, 2025, comprised of chronological claim file notes concerning Plaintiff's incident at Olive Garden and that were shared amongst Gallagher Bassett's representatives, Defendant's corporate representatives, and counsel.

Plaintiff disagrees with Olive Garden's assertions that the documents are protected from disclosure as asserted by Olive Garden. Plaintiff questions whether any of the documents that she seeks were created in anticipation of litigation so that the work product doctrine applies. In addition, Plaintiff questions whether any of the documents that she has requested were created by or sent to an attorney for the purposes of obtaining legal advice, which is necessary for the document(s) to be protected from disclosure based upon the attorney-client privilege. Accordingly, Plaintiff moved the Court to compel Olive Garden to produce the incident report drafted on January 2, 2024, and to require Olive Garden to produce the "claim notes" related to this incident. Doc. 47.

A significant portion of Plaintiff's original motion to compel revolved around the alleged inadequacies of Olive Garden's privilege log that it provided to Plaintiff pursuant to Federal Rule 26(b)(5)(A)(ii). In response to Plaintiff's original motion to compel, Olive Garden tacitly acknowledged that a more specific privilege log might be in order, and therefore, Olive Garden indicated that it would not object to the Court ordering it to provide a revised privilege log to Plaintiff in the hopes of resolving this discovery dispute. Doc. 59. Based upon Olive Garden's response and the Court's review

of Olive Garden's initial privilege log, the Court ordered Olive Garden to revise its privilege log and ordered Plaintiff either to withdraw her motion to compel (if the revised privilege log satisfied her discovery complaints) or to supplement her motion to compel (indicating how the revised privilege log did not satisfy her discovery complaints). Doc. 52.

Olive Garden's revised privilege log did not satisfy Plaintiff. Accordingly, Plaintiff filed a supplemental motion to compel. Doc. 58. Upon reviewing Plaintiff's supplemental motion, the Court determined that it would need to review the documents at issue in order to make a proper decision on Plaintiff's motions. Accordingly, the Court ordered Olive Garden to file the disputed documents, under seal, when it filed its response to Plaintiff's supplemental motion to compel. Doc. 59. Olive Garden has complied with the Court's Order. Docs. 60-62. The Court has reviewed the documents at issue, and therefore, this issue is now ripe for adjudication.

## II. Legal Standards Governing Plaintiff's motion

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 2020 WL 4736399, * 3 (N.D. Ill. Aug. 14, 2020). Federal Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, 2021 WL 1426875, * 2 (N.D. Ill. Apr. 15, 2021).

When an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses to requests, a party may move to compel an answer or

supplementation of the discovery response(s). Fed. R. Civ. P. 37(a)(3)(B); *Bailey v. Jezierski*, 2026 WL 927199, * 2 (N.D. Ind. Apr. 6, 2026). "[T]he resolution of discovery disputes is committed to the court's extremely broad discretion." *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

In the instant case, Olive Garden has withheld certain documents based upon the assertion of certain privileges. "[B]ecause evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

**A. Attorney-Client Privilege**

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege protects from disclosure during discovery or in a court hearing all "confidential communications between a client and an attorney for the purpose of obtaining legal advice." *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000). The purpose of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389.

Under Federal Rule of Evidence 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *Id*.

Because subject-matter jurisdiction in this case is based upon diversity of citizenship and the claims are brought under Illinois state law, Illinois privilege law governs. *Simon v. Nw. Univ.*, 259 F. Supp. 3d 848, 852 (N.D. Ill. 2017). To assert the attorney-client privilege under Illinois law, "a claimant must show that the statement originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hosp. & Med. Ctr.*, 745 N.E.2d 561, 566 (Ill. App. Ct. 2001). However, Illinois courts reviewing an assertion of the attorney-client privilege recognize that "the privilege, not the duty to disclose, is the exception." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991). Accordingly, the privilege should be construed "within its narrowest possible limits." *Id.* "[T]he party seeking to establish the privilege[ ] bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met." *In re Grand Jury Procs.*, 220 F.3d 568, 571 (7th Cir. 2000).

Furthermore, "[t]he administration of the attorney-client privilege in the case of corporations . . . presents special problems" because "a corporation must act through agents." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). In such cases, the privilege can extend to communications between two non-attorney agents "if they reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *Gerba v. National Hellenic Museum*, 338 F. Supp. 3d 851, 857 (N.D. Ill. 2018). Because this is a fact-intensive inquiry,

"[a]n assertion of privilege . . . must be made on a document-by-document basis." *In re Grand Jury Procs.*, 220 F.3d at 571.

Accordingly, Illinois law requires a corporation claiming attorney-client privilege to show that the communication was made by someone in the corporation's "control group." *Claxton v. Thackston*, 559 N.E.2d 82, 85 (Ill. App. Ct. 1990). Only a company's "top management who have the ability to make a final decision" and any "employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority" are considered to be part of the control group. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 258 (Ill. 1982). Distribution outside of the company's control group destroys the attorney-client privilege. *Sullivan v. Alcatel-Lucent USA, Inc.*, 2013 WL 2637936, * 4 (N.D. Ill. June 12, 2013).

**B. Work Product Doctrine**

Unlike the attorney-client privilege, claims of protection under the work-product doctrine are governed solely by federal law, as the doctrine has its origins in Federal Rule of Civil Procedure 26(b)(3) rather than Federal Rule of Evidence 501. *Abbott Lab'ys v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. 2001). In contrast to Rule of Evidence 501, Rule 26(b)(3) does not contain any requirement that federal courts apply state privilege law in cases involving state-law claims. *Id.* Under federal law, the attorney work-product doctrine protects "1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and 3) by or for a party or by or for a

party's representative." *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008). More specifically, the work product doctrine is set forth in Federal Rule 26(b)(3)(A), which provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id*.

The application of the doctrine is a fact-sensitive, document-by-document inquiry:

> In the work product context, the threshold question when determining whether a document was prepared in anticipation of litigation generally is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared for or obtained *because of* the prospect of litigation." *North Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995) (citation omitted) (emphasis added); *see Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). Therefore, documents prepared for other reasons, such as documents created in the ordinary course of business, cannot be withheld as work product. *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000); *see also In re General Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000) ("[A] document prepared for both legal and non-legal review is not privileged."); *Allendale*, 145 F.R.D. at 87 (holding that documents prepared in the ordinary course of business are not work product even if litigation is imminent or ongoing).

*City of Evanston v. Northern Illinois Gas Co.*, 2017 WL 11558474, * 2 (N.D. Ill. Aug. 31, 2017). As the United States Court of Appeals for the Seventh Circuit has stated:

> "The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery. As stated in *Soeder v. General Dynamics Corp.*, 90 F.R.D. 253 (D. Nev. 1980)[,] the distinction between whether defendant's 'in house' report was

> prepared in the ordinary course of business or was 'work product' in anticipation of litigation is an important one. 90 F.R.D. at 255. The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product.... A more or less routine investigation of a possibly resistable claim is not sufficient to immunize an investigative report developed in the ordinary course of business.... While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."

*Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982)); *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (reiterating *Binks* standard).

**C. Insurer-Insured Privilege**

Finally, Illinois law recognizes a privilege for certain communications between an insurer and an insured. "The rationale for the privilege," which is an outgrowth of the attorney-client privilege, is that "communications with the insurance company are essentially communications with an attorney in that the insurance company has a duty to defend the insured." *Benvenuto v. Action Marine, Inc.*, 1992 WL 194649, * 2 (N.D. Ill. Aug. 6, 1992). For that reason, "the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *People v. Ryan*, 225 Ill.App.3d 253, 167 Ill. Dec. 512, 587 N.E.2d 1127, 1129 (1992). To establish that the privilege applies, a party must prove "(1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend; and (4) that a communication was made

between the insured and an agent of the insurer." *Chicago Trust Co.*, 232 Ill. Dec. 550, 698 N.E.2d at 649. "The insurer-insured privilege can be applied to self-insured parties so long as the materials otherwise qualify under the privilege." *Thompson by Willis v. United States*, 2020 WL 3962270, * 2 (S.D. Ill. Jul. 13, 2020).

**III. Analysis**

**A. Revised Privilege Log**

To the extent that Plaintiff persists in her argument that Olive Garden's privilege log is deficient and that those deficiencies justify the Court granting her motion to compel, Plaintiff's argument is moot because the Court has conducted an *in camera* review of the documents at issue. *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 307 (D.D.C. 2009) (outlining four common remedies for a privilege log that fails to comply with the requirements of Federal Rule 26(b)(5), including an *in camera* review of the relevant documents).

**B. Claims Notes**

As for the claims notes, they fall into two categories. On the claims note entries dated June 20, 2024, the Gallagher Bassett representative indicated that an acknowledgement letter needed to be sent to Plaintiff's counsel. So as of June 20, 2024, Olive Garden knew that Plaintiff had hired an attorney, and so, it would be reasonable for Olive Garden to assume that litigation as anticipated, thereby making those notes protected by the work product doctrines. *Daskalakis v. CP Indy DT, LLC*, 2025 WL 1558178, * 4 (S.D. Ind. May 30, 2025) ("The Court finds that everything in these notes beginning on October 6, 2023, is protected work product, because on that date

Gallagher Bassett was notified that Plaintiffs had hired counsel to pursue a claim against Defendant and litigation clearly was anticipated.”).

As for the notes from January 2, 2024, through June 20, 2024, the Court finds that these notes are also protected by the work product doctrine. The Court has reached this conclusion based upon three factors. *First*, to the extent that Plaintiff is arguing that the work product doctrine does not apply because not all of the notes were made by or directly for an attorney, that argument would be incorrect. Federal Rule 26(b)(3)(A) provides that “a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party’s attorney, consultant, surety, indemnitor, insurer, or agent).” *Id*. Therefore, Federal Rule 26(b)(3)(A) provides work product protection to documents prepared and reviewed by individuals other than an attorney, and Federal Rule 26(b)(3)(A) provides protection for the claims notes for January 2, 2024, through June 20, 2024.

*Second*, upon review, the Court believes that the notes indicate that the notes were being prepared for or obtained because of the prospect of litigation. In the notes, the authors discuss the liability that Olive Garden’s representatives may or may not possess with regard to Plaintiff’s injuries. More importantly, Olive Garden’s representatives discuss the legal concept of comparative fault and what, if any, effect that comparative fault might have in this situation. In the Court’s opinion, the discussion of comparative fault in Illinois indicates that the authors were preparing for the prospect of litigation.

*Third*, Federal Rule 26(b)(3)(A)(ii) provides that, notwithstanding the work product doctrine, a party may obtain the disputed materials if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*. Plaintiff has not made such a showing. Accordingly, Plaintiff's motion to compel the production of the disputed electronic claims notes is denied because those documents are protected from disclosure pursuant to the work product doctrine. Fed. R. Civ. P. 26(b)(3)(A).

**C. Incident Report**

Although it is a closer call, the Court similarly finds that the incident report drafted by Olive Garden's manager on duty at the restaurant where Plaintiff was injured is also protected from disclosure based upon the work product doctrine. *Id*. It is true that the report could be read as a common business report that is routinely drafted by Olive Garden's managers. The Court also recognizes, as legitimate, Plaintiff's concern that, if the Court finds that the report is protected from disclosure, every contemporaneous incident report will be protected from disclosure based upon the work product doctrine regardless of possibility of litigation.

However, the facts of this case lead the Court to a different conclusion. *First*, the intended recipient for the incident report was not any Olive Garden corporate representative. Instead, the manager drafted the report for and sent the report to Gallagher Bassett. This fact distinguishes the report from a business report that a manager might routinely prepare, such as reporting an employee's absence from work or the fact that the coffee maker is no longer functioning properly. By sending the report

of a bodily injury to an insurance claims administrator, the report tends to show that litigation was anticipated.

*Second*, Plaintiff's injury was more than a minor slip-and-fall accident. According to her Amended Complaint, a large, heavy painting, approximately five feet by eight feet in size, struck Plaintiff in the head. As a result, Plaintiff lost consciousness for several seconds and sustained a visible laceration to her head.

Based upon the severity of Plaintiff's injuries and the size of the painting that hit Plaintiff, it is reasonable to assume that the manager understood that future litigation as a result of this accident was something more than a mere possibility. For example, in *Jenson v. Lowe's Home Centers, LLC*, 2024 WL 1657421 (S.D. Ind. Mar. 15, 2024), the United States District Court for the Southern District of Indiana held that an incident report drafted by a Lowe's assistant store manager on Lowe's Risk Management corporate portal was protected from disclosure based upon the work product doctrine. *Id*. at * 5. In reaching this conclusion, the *Jenson* court explained: "While the mere fact that litigation actually ensued, does not automatically justify a claim of the work-product doctrine, this was not an ordinary slip-and-fall case. Rather, according to the Plaintiff, hundreds of pounds of fertilizer bags fell on Plaintiff knocking her to the concrete floor unconscious. This kind of claim is the type of articulable claim, likely to lead to litigation that *Binks* contemplated. Defendant was aware of the severity and unique nature of this case from the time of the incident." *Id*. (internal citations and quotations omitted).

For the same reasons, the Court finds that, based upon the severity and the unique nature of the facts of this case that were known at the time of the accident, the manager's incident report is protected from disclosure based upon the work product doctrine because it was prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A).

And like the claims notes, Plaintiff has not made the showing under Federal Rule 26(b)(3)(A)(ii) Federal Rule 26(b)(3)(A)(ii) of a substantial need for the incident report and that she cannot, without undue hardship, obtain equivalent information via other means. Accordingly, Plaintiff's motions to compel are denied.

Finally, because the Court has determined that Olive Garden may decline Plaintiff's request for the incident report and the claims notes based upon the work product doctrine, the Court need not decide whether these documents are also properly withheld from disclosure by Olive Garden based upon the assertion of the attorney-client privilege or the insurer-insured privilege.

**IV. Conclusion**

Accordingly, Plaintiff's motion to compel (Doc. 47) and Plaintiff's supplemental motion to compel (Doc. 58) are DENIED.

**ENTERED** this 28th day of September, 2026.

/s/ Douglas J. Quivey

DOUGLAS J. QUIVEY
UNITED STATES MAGISTRATE JUDGE